## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

Darrin L. McCoy,

               Plaintiff,                Case No. 21-11739
                                            District Judge Denise Page Hood

v.                                    Magistrate Judge Jonathan J.C. Grey

Kilolo Kijakazi,

Acting Commissioner of Social Security

               Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Darrin L. McCoy brought this action under 42 U.S.C. § 405(g) and § 1383(c)(3) to challenge a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits and Supplemental Security Income. Both parties filed summary judgment motions (ECF Nos. 12, 16) which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). McCoy filed a reply in support of his motion. (ECF No. 17.) For the reasons set forth below, it is **RECOMMENDED** that McCoy's motion (ECF No. 12) be **DENIED**, that the Commissioner's motion (ECF No. 16) be **GRANTED**, and that the Commissioner's decision be **AFFIRMED**.

## I.    Background

### A. Procedural History

On February 13, 2015 McCoy filed an application for Disability Insurance Benefits ("DIB"). (Tr. 11.[1]) McCoy also filed an application for Supplemental Security Income ("SSI") on February 20, 2015. (*Id.*) In his applications, McCoy's initial alleged disability onset date was June 13, 2013. (*Id.*) McCoy amended the alleged onset date to April 1, 2014. (Tr. 529.) McCoy alleged disability due to degenerative disc disease at L4-L5 with mild canal stenosis.[2]  (Tr. 535.)

The Social Security Administration initially denied both applications on June 23, 2015. (Tr. 11.) McCoy requested an administrative hearing which was held on January 20, 2017 before Administrative Law Judge ("ALJ") Thomas Walters. (Tr. 21.) On February 17, 2017, ALJ Walters found that McCoy was not disabled. (Tr. 8-10.) McCoy requested that the Appeals Council review ALJ Walters' decision. On November 15, 2017, the Appeals Council denied McCoy's request for review, which rendered ALJ Walters' decision final. (Tr. 1-3.) On January 11, 2018, McCoy brought a civil suit in the Western District of Michigan to appeal the Commissioner's final decision. 1:18-cv-00040-ESC. The court found

---

[1] The administrative record appears on the docket at ECF No. 10. All references to it are identified as "Tr."

[2] Spinal stenosis is a narrowing of the spinal canal. https://www.mayoclinic.org/diseases-conditions/spinal-stenosis/symptoms-causes/syc-20352961.

that ALJ Walters' decision was not supported by substantial evidence and vacated the Commissioner's decision and remanded it for further factual findings. (Tr. 496-505.) Upon remand, ALJ Paul W. Jones rendered an unfavorable decision on January 24, 2020. (Tr. 526-528.) McCoy appealed this second unfavorable decision to the Appeals Council. The Appeals Council remanded the case back to ALJ Jones and ordered him to comply with the previous remand of ALJ Walters' decision. (Tr. 548-549.)

On May 3, 2021, ALJ Jones held a telephonic hearing. (Tr. 21.) McCoy, represented by counsel, and Vocational Expert ("VE"), Joanne Pepper, testified. (*Id.*) On May 10, 2021, ALJ Jones found that McCoy was not disabled. (Tr. 420.) McCoy again requested review of ALJ Jones' decision from the Appeals Council. (Tr. 127-128.) The Appeals Council denied McCoy's request for review on January 21, 2021, which made the agency's decision final. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004). McCoy filed a timely claim for judicial review of the Commissioner's final decision on July 21, 2021.

## B. The Disability Framework

Under the Social Security Act, benefits are available only for those who have a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (definition used in the disability insurance benefits context); *see also* 20 C.F.R. § 416.905(a) (definition used in the social security income context).

The Commissioner determines whether a claimant is disabled through a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920. First, if the claimant is engaged in significant gainful activity, no disability will be found. Second, if the claimant does not have a severe impairment or combination of severe impairments for a continuous period of at least 12 months, no disability will be found. Third, if the claimant's severe impairment meets or equals one of the impairments listed in the regulations, the claimant will be found disabled. Fourth, if the claimant can perform their past relevant work or has residual functional capacity ("RFC"), no disability will be found. Fifth, even if the claimant is unable to perform their past relevant work, benefits are denied if the claimant can adjust to other work in view of their age, education, and work experience. If the Commissioner "makes a dispositive finding at any point in the five-step process," the evaluation will not proceed to the next step. *Colvin*, 475 F.3d at 730.

The claimant bears the burden of proof through step four, in which they must show "the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*

*v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner in which the Commissioner must show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007).

### C. ALJ Jones' Application of the Disability Framework

ALJ Jones applied the five-step disability analysis. At step one, ALJ Jones found that McCoy did not engage in substantial activity from April 1, 2014 through July 20, 2018. (Tr. 415.) At step two, ALJ Jones found that McCoy had a severe impairment of lumbar degenerative disc disease. (*Id*.) ALJ Jones also found that McCoy had the following non-severe impairments: coronary artery disease, hypertension, acid reflux, right eighth rib fracture, obesity, and anxiety. (*Id*.) At step three, ALJ Jones found that McCoy's impairments, considered individually or combined, do not meet or medically equal the severity of one of the listed impairments. (Tr. 416.)

ALJ Jones then evaluated McCoy's RFC, finding that McCoy has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a). (Tr. 416-418.) At step four, ALJ Jones found that McCoy was able to perform his past relevant work as a mortgage loan processor and telephone solicitor as generally and actually performed, and as an administrative clerk as actually performed. (Tr. 418.)

In addition to being able to perform past relevant work, ALJ Jones found that consistent with his RFC and the VE testimony, McCoy can perform jobs such as a document preparer, final assembler, and a charge account clerk. (Tr. 420.) Accordingly, ALJ Jones found no disability existed and denied McCoy's request for benefits. (*Id*.)

## II.   Discussion

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final administrative decision. The Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations and internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. In determining whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted); *see also Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility

of witnesses, including that of the claimant.")

If the Commissioner's decision is supported by substantial evidence, it "must be affirmed even if the reviewing court would decide the matter differently . . . and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). Moreover, the ALJ is not required to discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006).

The Court's review is limited to an examination of the record. *Bass*, 499 F.3d at 512–13. The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) (citation omitted).

## B. Analysis

McCoy argues that: (1) his degenerative disc disease meets and/or equals Listing 1.04A (Disorders of the Spine) (ECF No. 12, PageID.1042); (2) ALJ Jones' RFC was unsupported by substantial evidence and did not comply with the Appeals Council's December 2020 remand order (*Id.*, 1044); and (3) ALJ Jones

failed to allocate adequate weight to McCoy's treating physician's opinion. (*Id.*, PageID.1048.)

### 1. McCoy's Impairment Does Not Meet or Medically Equal Listing 1.04A

If a claimant establishes that he has an impairment that meets and/or equals an impairment listed in the agency's regulatory appendix ("Listing"), the ALJ must find the claimant disabled at step three. 20 C.F.R. § 404.1520(a)(4)(iii). The claimant bears the burden to satisfy all of the Listing's requirements. *Hale v. Comm'r of Soc. Sec.*, 816 F.2d. 1078, 1083 (6th Cir. 1987). "An impairment that manifests only some of [a Listing's] criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

ALJ Jones found that McCoy's spinal condition did not meet Listing 1.04A because there was no evidence of nerve root compression, spinal arachnoiditis[3] or spinal stenosis and ineffective ambulation. (Tr. 416.) McCoy contends that he fulfilled all the requirements of the Listing. During the relevant time period, Listing 1.04A provided:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

---

[3] Arachnoiditis is a disorder caused by the inflammation of the membranes that surround and protect the nerves.

A. Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test.

20 C.F.R. Part 404, Subpt. P, App. 1 § 1.04 (2014-21). "To establish the equivalent of nerve-root compression [Plaintiff] must demonstrate a lack of motor strength, a lack of sensory functions, and a positive straight-leg raising test, among other things ..." *Dobbs v. Comm'r of Soc. Sec.*, No. 18-11903, 2019 WL 4196505, at *4 (E.D. Mich. Aug. 19, 2019), *report and recommendation adopted*, 2019 WL 4189485 (E.D. Mich. Sept. 4, 2019) (quoting *Bailey v. Comm'r of Soc. Sec.*, 413 Fed. Appx. 853, 855 (6th Cir. 2011)).

In its motion, the Commissioner argues that McCoy failed to show that he met numerous requirements under listing 1.04A. (ECF No. 16, PageID.1071.) Specifically, the Commissioner claims that McCoy failed to show motor loss, and an *ongoing basis* of sensory/reflex loss and a positive-straight leg raising test. (*Id.*, PageID.1069.) The undersigned agrees.

McCoy relies on four medical findings to support his claim that he satisfied all Listing 1.04A requirements: (1) during an evaluation with Dr. Michael Geoghegan, McCoy had a positive straight leg raising test in both the sitting and supine positions (Tr. 918); (2) Dr. Mark Oppenlander found that McCoy had diminished reflexes and diagnosed him with lower extremity symptomology and

epidural lipomatosis[4] at L5-S1(Tr. 393-394.); (3) Dr. Moses Muzquiz's reports reveal that McCoy experienced radicular[5] back pain, difficulty walking, and lower extremity weakness (Tr. 272-295); and (4) Dr. Molly Rossknecht discovered that McCoy had a mild left sided limp (Tr. 296-300.)

Since McCoy alleges an impairment with his lower back, Listing 1.04A requires him to show that he had a positive straight leg test. Dr. Geoghegan evaluated McCoy on March 30, 2018 for complaints of chronic pain in McCoy's lumbar spine. (Tr. 916-919.) As part of the evaluation, Dr. Geoghegan conducted a straight leg raise test for McCoy and he tested positive in both legs in the seated and supine positions.[6]  Notwithstanding the positive straight leg raise test and a mild left sided limp, Dr. Geoghegan found that McCoy did not require the use of an assistive device. Additionally, Dr. Geoghegan found McCoy's sensory function and reflexes intact, present and symmetrical. (Tr. 918.)

Dr. Oppenlander's November 22, 2016 evaluation of McCoy revealed some contrary findings to those of Dr. Geoghegan. Dr. Oppenlander found that McCoy had diminished reflexes throughout but that his sensation was intact. (*Id.*) Importantly, McCoy's straight raise test conducted during Dr. Oppenlander's

---

[4] Epidural lipomatosis occurs when an abnormal amount of fat is deposited on or outside the lining of the spine. https://www.cedars-sinai.org/health-library/diseases-and-conditions/e/epidural-lipomatosis.html.
[5] Radicular pain radiates from an individual's back and hip into his legs.
[6] The straight leg raise test is used to identify disc pathology or nerve root irritation. The test can detect nerve root compression. https://www.physio-pedia.com/Straight_Leg_Raise_Test.

evaluation was negative in both legs. (Tr. 393.)

McCoy attempts to piece together favorable portions of Dr. Geoghegan and Dr. Oppenlander's findings to fulfill the Listing requirements. This piecemeal approach fails. "Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation." 20 C.F.R. Pt. 404, Subpt. P, app. 1 § 1.00(D). "To meet the severity required by the listing, our policy requires the *simultaneous* presence of all of the medical criteria in listing 1.04A." Soc. Sec. Acquiescence Ruling 15-1(4), 80 F.R. 57418-02, 2015 WL 5564523, at *57420 (Sept. 23, 2015) (emphasis added); *see also Ray v. Comm'r of Soc. Sec*., No. 21-10228, 2022 WL 2072223 , at *5 (E.D. Mich. May 24, 2022), *report and recommendation adopted*, No. 21-10228, 2022 WL 2071051 (E.D. Mich. June 8, 2022) (agreeing with the Commissioner that though the claimant displayed some of Listing 1.04A's criteria individually, he did not experience the criteria simultaneously and/or over a consistent period).

In *Ray*, there were medical reports that revealed that the claimant did not experience sensory or reflex loss. In rebuttal, the claimant pointed to a medical report where the doctor noted diminished sensory loss. The claimant argued that Listing 1.04A "does not specify a number of times these findings need to occur, just that evidence exists in the record showing those findings." *Ray*, 2022 WL

2072223, at *5. *Ray* held that based on Listing 1.00(D)'s requirement that abnormal physical findings be present over a period of time, there was substantial evidence in the record to support the ALJ's finding that the claimant did not have the requisite severity and duration of motor loss accompanied by sensory or reflex loss. *Id*. at *7.

McCoy does not point to any evidence in the record that shows that he experienced a positive straight raise test and diminished reflexes simultaneously. Intermittent findings, as is the case here, are insufficient to satisfy the listing criteria. *Davis v. Comm'r of Soc. Sec.*, No. 18-13576, 2019 WL 6208732, at *8 (E.D. Mich. Oct. 31, 2019), *report and recommendation adopted*, No. 18-13576, 2019 WL 6173802 (E.D. Mich. Nov. 20, 2019).

In *Davis*, the claimant pointed to evidence where his primary care physician observed some muscle atrophy[7]. *Id.* However, later that month, another doctor observed no muscle atrophy. *Id*. A third doctor subsequently found that the claimant had normal strength and muscle tone. *Id*. Given the intermittent and dissimilar findings, the court concluded that the claimant did not satisfy the Listing 1.04A criteria and that the ALJ's conclusions were supported by substantial evidence. *Id*. (citing *Richardson v. Comm'r of Soc. Sec.*, No. 15-3049, 2016 WL 6802652, at *6 (S.D. Ohio Nov. 17, 2016)).

---

[7] Atrophy is the loss of muscle tissue.

In sum, given the intermittent findings and absence of simultaneous requisite findings, substantial evidence supports ALJ Jones' finding that McCoy failed to satisfy *all* Listing 1.04A requirements.

Furthermore, McCoy failed to establish that he experienced requisite motor loss (atrophy with associated muscle weakness or muscle weakness). During a January 5, 2017 evaluation at Physical Medicine and Rehabilitation (PMR), Dr. Strickler found that McCoy had normal strength, normal tone, and no atrophy. (Tr. 392.)

Moreover, McCoy points to Dr. Muzquiz's reports documenting McCoy's radicular back pain, difficulty walking, and lower extremity weakness (Tr. 272-295), and Dr. Molly Rossknecht's discovery of McCoy's mild left sided limp (Tr. 296-300.) McCoy's reliance is misplaced. Muscle weakness and pain do not equate to motor loss. *Miller v. Comm'r of Soc. Sec.*, 848 F.Supp.2d 694, 709 (E.D. Mich. Oct. 21, 2011). In *Miller*, the claimant argued that there was evidence of nerve root compression because she was experiencing radiating pain, lower extremity weakness, and a positive straight leg raising test. *Id.* at 701. *Miller* found that none of the claimant's medical records expressly stated that she suffered nerve root compression, and the claimant failed to meet her burden of proof. *Id.*

McCoy failed to present evidence that expressly stated that he experienced motor loss. Additionally, Dr. Geoghegan found that McCoy had 5/5 grip strength,

his hands had full dexterity, and McCoy had no difficulty getting on and off the exam table. (Tr. 918.) Dr. Oppenlander also found that McCoy had 5/5 strength in his upper and lower extremities, including hip flexion, knee extension, dorsiflexion, and plantarflexion. (Tr. 393.) Importantly, Dr. Rossknecht found that McCoy's motor function was intact. (Tr. 299.) ALJ Jones' finding that McCoy did not fulfill Listing 1.04A's motor loss requirement is supported by substantial evidence.

### 2. ALJ Jones' Complied with SSR 96-8p

ALJ Jones assessed McCoy with an RFC for a full range of sedentary work.[8] (Tr. 416.) An RFC "is the most a [plaintiff] can still do despite the physical and mental limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(d)(2). McCoy argues that ALJ Jones' RFC was not supported by substantial evidence. (ECF No. 12, PageID.1046.) McCoy bears the burden to demonstrate that he has a more restrictive RFC than that found by ALJ Jones. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999); *see also Jones*, 336 F.3d at 474. McCoy failed to meet that burden.

---

[8] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

When evaluating the intensity, persistence, and limiting effects of McCoy's symptoms, ALJ Jones found that McCoy's subjective complaints of pain were inconsistent with the objective medical evidence in the record. (Tr. 417.) In support of his finding, ALJ Jones analyzed the following evidence: (1) McCoy received effective conservative treatment and refused additional treatments (*Id*); (2) medical reports showed that McCoy had full or slightly reduced strength during the alleged disability period; and (3) McCoy participated in substantial gainful activity (SGA) activity after the alleged disability period and there was no significant deterioration of his medical conditions (*Id*).

### i.   Conservative Treatment

An ALJ may rely on a claimant's conservative treatment plan in assessing the credibility of his subjective complaints. *Bentley v. Comm'r of Soc. Sec.*, 23 Fed. Appx. 434, 435-436 (6th Cir. 2001)*; see also* SSR 96–7p, 1996 WL 374186 (July 2, 1996) (in assessing credibility, the ALJ must consider, among other factors, "[t]reatment, other than medication, the individual receives or has received"); 20 C.F.R. § 404.1529(c)(3) (same). A treatment plan may undermine a claimant's subjective complaints of pain if medication is effectively managing the pain, and the claimant has not sought or received physical therapy or other alternative treatment. *Helm v. Comm'r of Soc. Sec.*, 405 Fed. Appx. 997, 1001-1002 (6th Cir. 2011) (emphasis added). The reasoning behind this notion is that "when a claimant

15

alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment." *Strong v. Comm'r of Soc. Sec.*, 88 Fed. Appx. 841, 846 (6th Cir. 2004). This is particularly true when the claimant fails to comply with or refuses treatment. *Jennings v. Comm'r of Soc. Sec.*, No. 10-12830, 2011 WL 7025815, at *7 (E.D. Mich. Oct. 31, 2011) (holding that an ALJ may assess a claimant's credibility by considering whether the claimant has refused prescribed treatment) (citing *Sias v. Sec'y of Health and Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988)).

In November 2012, McCoy had a lumbar spine MRI that showed loss of lumbar lordosis, Schmorl's nodes, degeneration, bulges/protrusion and mild stenosis. (Tr. 417.) In January 2013, McCoy reported to his then primary care physician, Dr. Vincent Mamone, that he was not interested in epidural injections and/or back procedures. (Tr. 257.) Dr. Mamone prescribed McCoy pain medication. (Tr. 253.) McCoy later reported that the medication was providing adequate pain relief. (*Id*.) In April 2014, after moving from Florida to Michigan, McCoy made Dr. Muzquiz his primary care physician. (ECF No. 12, PageID.1031.) Dr. Muzquiz continued to refill McCoy's pain medication prescriptions. (Tr. 272.)

In 2014, Dr. Muzquiz referred McCoy to Allegiance Pain Management Center for evaluation and pain management. (Tr. 269.) However, according to an

August 18, 2014 correspondence, McCoy failed to schedule an appointment with

Allegiance Pain Management Center to receive additional treatment. (*Id*.)

During a June 8, 2015 evaluation, Dr. Rossknecht recommended that McCoy

continue to use his pain medications as instructed. (Tr. 300.) Notably, Dr.

Rossknecht also recommended that McCoy receive surgery and physical therapy to

help with his pain but McCoy stated that he was not interested in those treatments.

(*Id*.)

Similarly, on November 22, 2016, Dr. Oppenlander referred McCoy to PMR

for further evaluation and pain management. Following PMR's evaluation of

McCoy on January 5, 2017, PMR personnel recommended that he start psychiatric

treatment due to concerns of poor psychosocial health and high opioid risk, pain

counseling, and physical therapy. (Tr. 392, 394.) McCoy did not follow through

with pain counseling and physical therapy. (Tr. 537.)

Though providers have recommended that McCoy receive more aggressive

treatment such as surgery and physical therapy, the record reveals that McCoy

refused to receive additional treatments. McCoy neither contends nor points to any

evidence in the record that shows that he attempted or received treatment more

aggressive than pain medication. *Fountain v. Comm'r of Soc. Sec.*, No. 20-11300,

2021 WL 3260075, at *3 (E.D. Mich. July 8, 2021) (affirming ALJ's decision to

undermine claimant's complaints of pain because she did not receive any

specialized treatment for her degenerative disc disease).

Given the absence of additional treatment, refusal of injections and back surgery, and the failure to follow through with recommended physical therapy, there is substantial evidence in the record to support ALJ Jones' finding that McCoy's receipt of conservative treatment undermined his subjective complaints of pain. *McKenzie v. Commissioner*, No. 99–3400, 2000 WL 687680, at * 4 (6th Cir. May 19, 2000) ("[p]laintiff's complaints of disabling pain are undermined by his nonaggressive treatment")

### ii.   Full or Slightly Reduced Strength

During the relevant time period, as mentioned above during the Listing 1.04A analysis, numerous doctors found that McCoy possessed full or slightly reduced strength.

During a June 8, 2015 evaluation, Dr. Rossknecht found that McCoy had full grip strength and unimpaired dexterity in both hands. (Tr. 300.) On November 22, 2016, Dr. Oppenlander found that McCoy had full strength in his upper and lower extremities.  (Tr. 393.) On January 5, 2017, PMR found that McCoy had normal strength. (Tr. 392.) On March 30, 2018, Dr. Geoghegan found that McCoy had full strength throughout, full grip strength, his hands had full dexterity, and that he had no difficulty getting on and off the exam table. (Tr. 918.) *See McClure v. Comm'r of Soc. Sec.*, No. 20-12517, 2022 WL 1055433, at *9 (E.D. Mich. Feb. 4, 2022),

*report and recommendation adopted*, No. 20-12517, 2022 WL 730631 (E.D. Mich. Mar. 10, 2022) (Plaintiff's normal gait, lack of need for a walking assistant device, and full muscle strength supported the ALJ's rejection of the claimant's subjective claims of limitation).

### iii.    State Agency Physicians

State agency physician, Dr. S. Abassi, opined in April 2018 that McCoy was limited to light work and occasional postural activities. (Tr. 418.) ALJ Jones gave Dr. Abassi's opinion little weight. (Tr. 418.) ALJ Jones found that McCoy's limp, positive straight-leg raise test, and limited lumbar motion required further limitations than those found by Dr. Abassi. (*Id*.) ALJ Jones rendered a more favorable sedentary RFC than Dr. Abassi's. An ALJ's more restrictive finding than that of the state agency physician's may be lend as support for the ALJ's finding. *Mosed v. Comm'r of Soc. Sec.*, No. 14-14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016), *report and recommendation adopted*, 2016 WL 1084679 (E.D. Mich. Mar. 21, 2016) ("Plaintiff's argument that the ALJ erred in assessing a more restrictive RFC than that opined by the State agency consultants is curious and unavailing"); *see also Warren v. Comm'r of Soc. Sec.,* No. 13-cv-13523, 2014 WL 3708565, at *4 (E.D. Mich. July 28, 2014) (ALJ's finding was supported by substantial evidence, in part because the ALJ's RFC was significantly more restrictive than the state agency physician's); *Drinkwine v. Comm'r of Soc. Sec.*,

No. 18-12327, 2019 WL 4866144, at *3 (E.D. Mich. Aug. 8, 2019) (same).

Similar to other courts in this district, the undersigned finds that ALJ Jones' more restrictive limitations is evidence to support his RFC finding. It does not appear that McCoy challenges ALJ Jones' analysis of the state agency psychologist reports.

At bottom, the undersigned finds that ALJ Jones' finding was supported by substantial evidence in the record.

### iv.    ALJ Jones Did Not Err in the RFC Analysis

In addition to arguing that ALJ Jones' finding was unsupported by substantial evidence, McCoy argues that ALJ Jones' RFC analysis was flawed for a number of reasons. McCoy contends that ALJ Jones: (1) improperly considered McCoy's SGA after the alleged disability period; (2) improperly discarded McCoy's mother's functional report; (3) failed to consider McCoy's obesity; and (4) failed to analyze the effects of McCoy's depression and anxiety on his pain level.

McCoy testified that he began to work part-time in 2019 as a grocery store stocker because his sister sold the house he was living in, and he needed to make money to find a place to live. (Tr. 487.)

ALJ Jones inferred from McCoy's return back to work from 2019 through 2020, without significant deterioration of his medical conditions, that he could

have performed SGA during the alleged disability period, April 1, 2014 through
July 20, 2018. (Tr. 417.) McCoy argues that ALJ Jones erred in reaching this
conclusion because his ability to work in 2019 does not mean he was able to work
during the alleged disability period. (ECF No. 12, PageID.1045-1046.) In response,
the Commissioner contends that McCoy makes no showing that his SGA after the
disability period caused significant deterioration of his medical condition. (ECF
No. 16, PageID.1073-1074.)

The Social Security Act provides that an individual who is engaged in SGA
*during* the alleged period of disability is not entitled to disability benefits. 42
U.S.C. § 423(f) (emphasis added). The Commissioner does not cite, and the
undersigned is unable to find, any authority permitting the ALJ to infer that a
claimant could have engaged in SGA during the disability period merely because
the claimant engaged in SGA *after* the disability period. As the Commissioner
alludes to in its brief, such an inference is unreasonable. (ECF No. 16,
PageID.1074.)

Nonetheless, as discussed above, ALJ Jones' finding of sedentary work is
supported by substantial evidence in the record. *Ulman v. Comm'r of Soc. Sec.*,
693 F.3d 709, 714 (6th Cir. 2012) (even if part of an ALJ's factual analysis is
erroneous, a court must affirm where the remaining evidence is sufficient to bring
a reasonable mind to the ALJ's conclusion).

McCoy also argues that ALJ Jones erroneously disregarded his mother, Janice Abel's, May 2015 Function Report. (ECF No. 12, PageID.1046.) In the May 2015 Function Report, Ms. Abel stated that McCoy had back issues affecting his ability to lift, do postural activities and complete tasks. (Tr. 193-200.) ALJ Jones gave this opinion some weight but noted that it is from a non-acceptable medical source and unsupported by the record, specifically, McCoy's ability to do self-care, chores, and errands. ALJ Jones' consideration of Ms. Abel's report was correct.

Social Security Ruling ("SSR") 96-7 states that "nonmedical sources such as family and friends" "may provide information from which inferences and conclusions may be dawn about the credibility of the individual's statements." As the Commissioner correctly points out, the ALJ has discretion to weigh lay witness statements, and they are not entitled to a presumption of weight. 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2) (the ALJ generally should explain the weight given to nonmedical source opinions). The Agency rules enable the ALJ to consider the nonmedical source opinion but find that the opinion is unsupported by the record. ALJ Jones explained the weight given to Ms. Abel's report and the reasoning behind according that weight. Thus, ALJ Jones did not commit error.

At step two of the sequential evaluation process, ALJ Jones noted that substantial medical evidence does not support a finding that McCoy's obesity more than minimally limited his ability to engage in work activity. (Tr. 415.) McCoy

argues that he was obese during the alleged disability period and ALJ Jones'
decision "does not take the well-known effects of obesity on pain levels from
weight bearing joints into account." (ECF No. 12, PageID.1047.)

McCoy bears the burden to show how his alleged impairments require
greater RFC limitations. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th
Cir. 2008). In his motion, McCoy does not cite to any portion of the record that
shows that his obesity caused him any limitations. Instead, McCoy cites to
publications that say obesity accounts for increased pain levels, generally. *Id*. The
agency "will not make general assumptions about the severity or functional effects
of obesity combined with another impairment(s)…We evaluate each case based on
the information in the case record." SSR 19-2p, 2019 WL 2374244, at*4.

McCoy failed to satisfy his burden that his obesity should have resulted in
greater limitations. ALJ Jones did not error in finding that substantial medical
evidence did not support a finding that McCoy's obesity more than minimally
limited his ability to engage in work activity.

The final reason McCoy claims ALJ Jones erred in his RFC analysis is
because ALJ Jones purportedly failed to analyze the effects of McCoy's depression
and anxiety on his pain level. The undersigned disagrees.

After conducting a thorough analysis of the disability regulations for
evaluating mental disorders under section 12.00C of the Listing of Impairments,

ALJ Jones found that McCoy's medically determinable mental impairment of anxiety does not cause more than minimal limitation in his ability to perform basic mental work activities. McCoy bears the burden to establish that he was entitled to greater limitations than those found by ALJ Jones. McCoy failed to satisfy that burden. McCoy points to no evidence in the record that he was entitled to greater restrictions.

### 3. Treating Physician's Opinion

Finally, on January 4, 2017, Dr. Muzquiz completed a medical source statement ("opinion"). (Tr. 385-389.) McCoy argues that ALJ Jones erred in not giving Dr. Muzquiz's opinion controlling weight and failed to include his reasoning in discounting Dr. Muzquiz's opinion. (ECF No. 12, PageID.1047-1049.)

For claims filed before March 27, 2017, an ALJ is to give a treating physician's opinion controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(d)(2).[9] The ALJ may discount a treating physician's opinion for good reason. *Gayheart v. Comm'r of Soc. Sec.*, 710

---

[9] McCoy initially filed his application for benefits on February 13, 2015 and then a subsequent claim on December 5, 2017. Per the Appeals Council remand order, the rules prior to the March 27, 2017 amendment apply.

F.3d 365, 376 (6th Cir. 2013). "'If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.'" *Id.* (citing *Wilson*, 378 F.3d at 544). However, "there is no per se rule that requires an articulation of the six regulatory factors . . .". *Mata v. Comm'r of Soc. Sec.*, No. 18-12102, 2019 WL 4127192, at *5 (E.D. Mich. Aug. 14, 2019) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. Appx 216, 222 (6th Cir. 2010)). "An exhaustive factor-by-factor analysis" is not required. *Francis v. Comm'r of Soc. Sec.*, 414 F. Appx. 802, 804-05 (6th Cir. 2011) (citing § 404.1527(d)(2)).

ALJ Jones analyzed Dr. Muzquiz's opinion and provided good reasons for the weight he assigned it. Indeed, ALJ Jones recognized Dr. Muzquiz as McCoy's primary treating source. ALJ Jones assessed Dr. Muzquiz's opinion as follows:

> Claimant's physician, M. Muzquiz, MD, opined in January 2017, claimant could lift less than 10 pounds. Dr. Muzquiz also opined he could sit or stand/walk two hours each and needed to lie down/recline and [sic] hour, in an 8-hours workday and needed to shift positions. In addition, Dr. Muzquiz opined he could not walk a block and needed unscheduled breaks. Dr. Muzquiz opined claimant could not do simple tasks and was moderately limited in handless stress (10F). I give this opinion some weight for sedentary work but not as much for limited postural activities because of the conservative care provided. I give the opinion of needing breaks little weight because of claimant's reported

25

ability to perform self-care, chores and driving/errands (3E).

(Tr. 418.) McCoy acknowledges that ALJ Jones "adopted" Dr. Muzquiz's opinion

in part by limiting McCoy to sedentary work. (ECF No. 12, PageID.1035.)

However, ALJ Jones found that parts of Dr. Muzquiz's opinion was inconsistent

with the treatment records. ALJ Jones discounted Dr. Muzquiz's opinion that

postural limitations were needed. ALJ Jones discounted this portion of Dr.

Muzquiz's opinion because McCoy received conservative treatment. As

mentioned, the record reveals that McCoy received effective conservative

treatment and refused additional treatment. This evidence undermines Dr.

Muzquiz's opinion that McCoy should be granted limitations for postural

activities. ALJ Jones also discounted Dr. Muzquiz's opinion that McCoy needs

breaks. In his opinion, when asked whether McCoy would require unscheduled

breaks, Dr. Muzquiz checked "yes". As a threshold matter, Dr. Muzquiz did not

indicate the frequency and duration of the unscheduled breaks. Dr. Muzquiz's

failure to include specifics of the "needed" breaks supports ALJ Jones' discounting

of Dr. Muzquiz's opinion. *See Mata*, 2019 WL 4127192, at *6 (affirming the

ALJ's decision to discount the treating physician's opinion that the claimant

needed unscheduled breaks because the opinion is "vague and does not provide the

frequency or duration of these breaks"), *report and recommendation adopted*, 2019

WL 4077593 (E.D. Mich. Aug. 29, 2019). Moreover, McCoy's ability to perform

self-care, chores and driving/errands is inconsistent with his need for an unspecified number of breaks. Dr. Muzquiz's opinion concedes that McCoy would never be absent from work or unable to complete an eight-hour workday as a result of his impairments. (Tr. 388.) This concession contradicts McCoy's purported need for unscheduled breaks.

Thus, ALJ Jones' analysis of Dr. Muzquiz's opinion is supported by substantial evidence in the record.

## III.   Recommendation

For the preceding reasons, the undersigned **RECOMMENDS** that McCoy's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the Commissioner's decision be **AFFIRMED**

**SO ORDERED.**

Dated: February 27, 2023                    s/**Jonathan J.C. Grey**
                                            JONATHAN J.C. GREY
                                            United States Magistrate Judge

## Notice to the Parties About Objections

Within 14 days of being served with a copy of this Report and Recommendation, any party may object to and seek review of the proposed findings and recommendations set forth above. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). If a party fails to timely file specific objections, any further right of appeal is waived. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Only specific objections to this Report and Recommendation are preserved for appeal; all other objections are waived. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). Each objection must be labeled as "Objection No. 1," "Objection No. 2," etc. Each objection must specify precisely the provision of this Report and Recommendation to which it pertains. In accordance with Local Rule 72.1(d), copies of objections must be served on this Magistrate Judge.

A party may respond to another party's objections within 14 days after service of any objections. Fed. R. Civ. P. 72(b)(2). Any such response should be concise and address each issue raised in the objections in the same order and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

**Certificate of Service**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 27, 2023.

<u>s/ **J. Owens**</u>
**Julie Owens**